IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID HARRIS, | ) | |
|     Plaintiff | ) | C.A. No. 11-256 Erie |
| | ) | |
| v. | ) | |
| | ) | **District Judge McLaughlin** |
| MICHAEL BARONE, et al., | ) | **Magistrate Judge Baxter** |
|     Defendants | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

It is respectfully recommended that Defendants' motion for partial summary judgment [ECF No. 26] be granted and that Defendants Beard and Murin be terminated from this case.

### II.     REPORT

#### A.     Relevant Procedural History

On October 26, 2011, Plaintiff David Harris, an inmate formerly incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest")[1], filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Named as Defendants are: Michael Barone, former Superintendent at SCI-Forest ("Barone"); Debra Sauers, current Superintendent at SCI-Forest ("Sauers"); Jeffrey Beard, former Secretary of the Pennsylvania Department of Corrections ("Beard"); and T. Murin, a lieutenant at SCI-Forest ("Murin").

---

[1] Plaintiff is presently incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion").

1

Plaintiff claims that Defendants violated his rights under the eighth and fourteenth amendments to the United States Constitution by prohibiting him from showering, shaving, and exercising outdoors for a period of 82 days, from March 5, 2010 to May 27, 2010. As relief for his claims, Plaintiff seeks declaratory and injunctive relief and monetary damages. Defendants filed an answer to Plaintiff's complaint on March 28, 2012, and the parties have since completed discovery.

On August 23, 2012, Defendants filed a motion for partial summary judgment [ECF No. 26], seeking the entry of judgment in favor of Defendants Beard and Murin based upon their lack of personal involvement in the complained-of misconduct. Plaintiff filed a brief in opposition to Defendants' motion on September 26, 2012. [ECF No. 31]. This matter is now ripe for consideration.

### B. Relevant Factual History[2]

On or about January 31, 2008, Plaintiff was transferred to SCI-Forest, as a separation transfer, due to his involvement in a serious staff assault that occurred at SCI-Fayette on December 21, 2007. (See ECF No. 29-1 at p. 2). Plaintiff's assaultive behavior toward staff continued at SCI-Forest, with three incidents reportedly occurring in 2009, and three more reported on January 13, 2010, February 17, 2010, and March 5, 2010. (See ECF No. 29-1 at p. 6). When the last incident occurred on March 5, 2010, Lieutenant Gill recommended to his shift commander, Captain Repko, that Plaintiff be placed on exercise, shower, and spit mask restrictions for a period of 90 days. (See ECF No. 29-1 at p. 5). Captain Repko approved the recommendation and submitted it to Defendant Barone, who approved

---

[2] The facts set forth herein are gleaned from Defendants' Concise Statement of Undisputed Material Facts [ECF No. 28], to the extent the same have been accepted by Plaintiff in his "Responsive Concise Statement" [ECF No. 30] or are otherwise fully supported by the evidence of record.

the imposition of the requested restrictions for a period of 90 days, beginning March 5, 2010. (Id.).[3] Defendant Barone subsequently retired from his position as Superintendent at SCI-Forest and was succeeded by Defendant Sauers on March 28, 2010. (See ECF No. 31-1 at pp. 12-13, 16-17).

On or about April 22, 2010, Plaintiff wrote a letter to Defendant Beard complaining, *inter alia*, that he had been on shower and exercise restrictions for 47 days, and that he was told the restrictions would continue for a total of 90 days. (See ECF No. 29-2 at pp. 9-10). This letter was forwarded to SCI-Forest's security office for an investigation, and a written report was issued by Security Lieutenant Duncan indicating that Plaintiff's complaints of mistreatment were unfounded. (Id. at pp. 12-13).

On May 13, 2010, Plaintiff filed a grievance against Defendant Murin complaining that Murin refused to move Plaintiff into a cell with a built-in shower due to the continuing restrictions approved by Defendant Barone, while allegedly telling Plaintiff that "if it were up to me you would stay in this cell forever, stinking like the dirty nigger you are." (See ECF No. 29-2 at pp. 34-35). Captain Ireland wrote an initial review response indicating that Defendant Murin was merely following Defendant Barone's written orders when he refused Plaintiff's cell change request, and denied ever referring to Plaintiff as a "dirty nigger." (Id. at p. 33). As a result, the grievance was considered resolved. Captain Ireland's response was subsequently upheld on appeal. (Id. at pp. 30-32).

On May 27, 2010, the Program Review Committee ("PRC") met to review Plaintiff's disciplinary custody ("DC") status and recommended that Plaintiff's DC status be continued, and that all restrictions be removed except that Plaintiff should continue to be placed in a secure food pass cell, with all of his movement videotaped and escorted by a commissioned officer. This recommendation

---

[3] Lt. Gill also recommended the following restrictions, which were approved by Captain Repko and imposed by Defendant Barone for the requested 90 day period: secure food pass, videotape of movements, and a commissioned officer present for movements.

was approved by Defendant Sauers and Plaintiff's exercise, shower, and spit mask restrictions were removed at such time.

### C. Standards of Review

#### 1. Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories

and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure

of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### **D.** **Discussion**

Defendants argue that Plaintiff cannot establish the personal involvement of either Defendant Beard or Defendant Murin in the alleged constitutional violations and, thus, summary judgment should be entered in their favor.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to

6

violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations). If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode, 845 F.2d at 1208; Cooper v. Beard, 2006 WL 3208783 at * 14 (E.D.Pa. Nov. 2, 2006).

### 1. Defendant Beard

Plaintiff claims that "Defendant Beard was deliberately indifferent with regard to Plaintiff's mental and physical well-being in that [he] enforced an unconstitutional policy that permitted staff to impose restraints on Plaintiff' ability to exercise outdoors, shower, and shave for 82 days." (Id. at ¶ 40). It is apparent from the evidence of record, as well as Plaintiff's own allegations, that Defendant Beard was not directly involved in the decision to impose the challenged shower and exercise restrictions. Instead, Plaintiff is claiming that the restrictions were imposed in accordance with a DOC policy that was allegedly implemented by Defendant Beard, in his former role as DOC Secretary. In particular, Plaintiff challenges the DOC's policy that allegedly gives facility managers, such as Defendants Barone and Sauer, unfettered discretion to impose restrictions on an inmate's ability to, *inter alia*, shower and exercise, for "however long they choose to" without giving the inmate prior notice and/or a hearing. (See ECF No. 31, Plaintiff's opposition brief, at pp. 1-2).

The Third Circuit has held that when a supervising official knowingly permits a continuing custom or policy that results in harm to the plaintiff, Section 1983 liability may attach. Colburn v. Upper Darby Township, 838 Fed. 2d 663, 673 (3d Cir. 1988), cert. denied, 489 U.S. 1065 (1989). However, at a minimum such liability may be imposed "only where there are both
(1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have

communicated a message of approval to the offending subordinate." Id., quoting Chinchello, 805 F.2d at 133; see also Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997).

Applying the foregoing test to the circumstances of this case, Plaintiff must first demonstrate that Defendant Beard had either contemporaneous knowledge of the challenged restrictions imposed by Defendant Barone or knowledge of a prior pattern of similar incidents. This Plaintiff cannot do. It is apparent from the record that the restrictions at issue were imposed by Defendant Barone on March 5, 2010; however, the first date on which Plaintiff may claim that Defendant Beard was made aware of such restrictions is the date Beard received Plaintiff's letter of April 22, 2010 -- nearly seven weeks after the restrictions were imposed on Plaintiff. This negates any claim that Defendant Beard had contemporaneous knowledge of the imposition of such restrictions. There also is no evidence to support any assertion that Defendant Beard had knowledge of a prior pattern of similar restrictions having been imposed by Defendant Barone. To the contrary, Defendant Barone has acknowledged the possibility that Plaintiff is the only inmate whose behavior necessitated the imposition of such restrictions. (ECF No. 29-2 at p. 41, ¶¶ 4-5). Thus, Plaintiff cannot meet the first prong of the test enunciated in Colburn.

Moreover, there is nothing in the record that would support a finding that Defendant Beard's alleged inaction communicated a message of approval regarding the restrictions. In fact, although Defendant Beard has no specific recollection of receiving Plaintiff's letter of April 22, 2010 (ECF No. 29-2 at p. 61, ¶ 9), it is apparent that he or one of his staff members forwarded the letter to SCI-Forest's Security Office for investigation. (ECF No. 29-2 at pp. 12-13). Thus, rather than exhibiting deliberate indifference or conveying a message of approval through inaction, Defendant Beard, or his office, initiated an investigation of Plaintiff's concerns.

In short, the record is devoid of any evidence that would implicate Defendant Beard in either the imposition of the challenged restrictions or any constitutional violations allegedly arising

therefrom. Accordingly, summary judgment should be entered in Defendant Beard's favor and he should be terminated from this case.

### 2. **Defendant Murin**

Plaintiff alleges that Defendant Murin "had the authority as an RHU lieutenant to arrange for Plaintiff to move to another cell" with a built-in shower, but refused to do so. As a result, Plaintiff claims that Defendant Murin violated his Eighth Amendment right to be free from cruel and unusual punishment because he allowed Plaintiff to "continue enduring restraints on outdoor exercise, showers, and shaves…." (ECF No. 5, Complaint, at ¶¶ 26, 27, 41).

In response to Plaintiff's allegations, Defendants assert that "Plaintiff's contention that Lt. Murin has 'the authority as an RHU lieutenant' to arrange for his movement to a shower cell is nothing more than a naked, conclusory assertion, unsupported by fact." (ECF No. 27, Defendants' Brief, at p. 9). In support of this assertion, Defendants have submitted the Declaration of Michael Overmyer, Deputy Superintendent for Centralized Services at SCI-Forest, who declares that "[n]either Lt. Murin nor any other [RHU] Lieutenant had the ability or authority to release [Plaintiff] from the restrictions imposed on 3/5/10. In fact, even a Shift Commander (a Captain) could not remove those restrictions without approval of the Superintendent." (ECF No. 29-2 at p. 51, ¶ 4). Plaintiff has presented no evidence to contradict this declaration. Thus, Plaintiff's bald assertion that Defendant Murin had the authority to remove one or more of the challenged restrictions, but refused to do so, is without merit.

Plaintiff also alleges that when Defendant Murin refused to move him to another cell, he called Plaintiff a "dirty nigger." To the extent Plaintiff is attempting to state a constitutional claim against Defendant Murin based upon this alleged racial slur, it is well-settled that the use of words, no matter how violent, is not actionable under 42 U.S.C. § 1983. See Wright v. O'Hara, 2004 WL 1793018 at *7 (E.D.Pa. Aug. 11, 2004)("[w]here plaintiff has not been physically assaulted, defendant's words and

gestures alone are not of constitutional merit")(citations omitted); MacLean v. Secor, 876 F.Supp. 695, 698-99 (E.D.Pa. 1995)("[i]t is well-established that verbal harassment or threats ... will not, without some reinforcing act accompanying them, state a constitutional claim"); Murray v. Woodburn, 809, F.Supp. 383, 384 (E.D.Pa. 1993)("Mean harassment ... is insufficient to state a constitutional deprivation")(listing cases).

Based on the foregoing, therefore, summary judgment should be entered in favor of Defendant Murin and he should be terminated from this case.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion for partial summary judgment [ECF No. 26] be granted, that summary judgment be entered in favor of Defendants Beard and Murin, and that said Defendants be terminated from this case.

The only claims that should proceed to trial in this case are Plaintiff's Eighth Amendment conditions of confinement claim against Defendants Barone and Sauers, and Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Barone.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file objections will waive the right to

appeal. Brightwell v. Lehman, 637 F. 3d 187, 193 n. 7 (3d Cir. 2011).


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge


Date: December 26, 2012

cc: The Honorable Sean J. McLaughlin
United States District Judge