# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID HARRIS, <br>         Plaintiff, <br><br> v <br><br> MICHAEL BARONE and DEBRA SAUERS, <br> *SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES*, <br>         Defendants. | 1:11-256 |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is DEFENDANTS' MOTION IN LIMINE RE: INMATE WITNESSES (ECF No. 40) filed by Michael Barone and Debra Sauers ("Defendants"). David Harris ("Plaintiff") has filed a RESPONSE TO DEFENDANTS' MOTION IN LIMINE RE: INMATE WITNESSES (ECF No. 45). Accordingly, the matter has been fully briefed and is ripe for disposition.

### I.    Background

The parties are intimately familiar with this case, so a full recitation of the factual and procedural history is not necessary. However, some additional background is required to place Defendants' motion in context.

In his pretrial statement, Plaintiff identified 16 fellow inmates from SCI-Forest who he planned to call to testify at trial on his behalf: Hector Huertas, Major Tillery, David Henry, Eric Maple, Mark McClary, Dwayne Watts, Jerome Coffey, Andre Jacobs, Michael Harrison, Edward Graziano, Shane Liggins, Matthew Jenkins, Telly Royster, Robert Williams, John Harris, and Yassin Mohamed (collectively, the "inmate-witnesses"). During a telephonic pretrial conference held on September 9, 2013, Plaintiff conceded that five of the 16 prospective inmate-witnesses –

Jacobs, Harrison, Graziano, Liggins, and Royster – were never housed at SCI-Forest and therefore would not be called to testify. Plaintiff contended that the remaining witnesses should be permitted to testify for two general purposes. First, they could testify that they had similar histories of misconduct but were not placed under as severe restrictions. Second, they could testify the water in Plaintiff's cell was turned off during the 82-day period in which he was not permitted to leave his cell for showers and exercise. At the conclusion of the pretrial conference, the parties agreed to confer via telephone to clarify precisely why the testimony of each inmate was sought.

Defendants' counsel and Plaintiff did confer on September 25, 2013, at which time Plaintiff made an informal offer of proof as to each potential witness:

- Huertas was housed in the same Restricted Housing Unit ("RHU") block as Plaintiff and will testify that Plaintiff's water was turned off and that he was denied meals. Plaintiff explains that Huertas can also testify about the facts underlying one of Plaintiff's misconducts.

- Tillery was housed in the same RHU block as Plaintiff and will testify that Plaintiff's water was turned off and that he was denied meals.

- Jenkins was housed in the same RHU block as Plaintiff and will testify that Plaintiff's water was turned off and that he was denied meals. Plaintiff also claims that Jenkins complained to prison staff that Plaintiff began to smell in May 2010 because he had not been permitted to shower for months and that Plaintiff told a prison psychologist that he was feeling suicidal.

- John Harris was housed in the same RHU block as Plaintiff and will testify that Plaintiff's water was turned off and that he was denied meals. Plaintiff also claims that Harris, who was housed in a cell with a built-in shower, will testify that at some point during the 82-day period during which Plaintiff was not permitted to leave his cell, he offered to switch cells with Plaintiff so that he could use a shower instead of bathing in a sink.

- Henry and Mohamed will be called to testify about the Restricted Release List ("RLL") and that, although they had engaged in worse misconduct than Plaintiff, they were never placed on similar restrictions.

2

- Maple and Coffey will testify about racism at SCI-Forest under Defendant Sauers and the alleged denial of grievance forms.

- McClary will testify as to the incident which led to Plaintiff's September 4, 2009, misconduct.

- Watts will testify that SCI-Forest staff encouraged other inmates to harm Plaintiff.

- Williams will testify that Plaintiff did not spit on a corrections officer, as was alleged in the March 5, 2010, misconduct that immediately preceded the imposition of the restrictions.

*See* Def.'s Mot. in Limine, Ex. 1 (ECF No. 40); Pl.'s Resp. 3-8 (ECF No. 45).

On September 26, 2013, Defendants filed this motion, in which they seek to prevent all 11 inmate-witnesses from testifying because their testimony is purported to be irrelevant to Plaintiff's claims for violations of the Eighth and Fourteenth Amendments.[1] Plaintiff filed a response on October 15, 2013, attempting to show the relevancy of each inmate-witness's testimony. The case is tentatively scheduled for trial in April 2014.

## II. Discussion

To determine the relevancy of the proposed testimony from the 11 inmate-witnesses, it is

---

1. Defendants note in their motion that it is unclear whether Plaintiff still intends to pursue a procedural due process claim. *See* Def.'s Mot. in Limine 1 (ECF No. 40). Before this case was re-assigned from former Chief District Judge Sean McClaughlin to the undersigned Judge, Defendants did not seek summary judgment as to the due process claim in its entirety. Instead, they only sought to dismiss Secretary Beard as a defendant on that claim, which request was granted by Judge McClaughlin. *See* Mem. J. Order, Jan. 15, 2013 (ECF No. 34). In fact, Defendants previously acknowledged that "[t]he case should proceed to trial on . . . the procedural due process claim against Superintendent Barone." Def.'s Br. in Support of Mot. for Partial Sum. J. 2 (ECF No. 27). Consistent with that, Plaintiff has made clear through his pretrial statement and response to Defendants' motion in limine, as well as his statements during the supplemental telephonic pretrial conference on October 25, 2013, that he believes the due process claim is still alive. However, as the Court expressed at the pretrial conference, it is necessary to address the threshold issue of Plaintiff's due process claim – whether the conditions of his confinement constituted an "atypical and significant hardship" such that he had a protected liberty interest under *Sandin v. Connor*, 515 U.S. 472 (1995) – as a matter of law prior to trial. *See Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999) (explaining "that the ultimate issue of atypicality is one of law"). In the interest of judicial economy and not presenting a potentially frivolous claim to a jury, the Court exercised its discretion and granted Defendants' oral motion for leave to file a renewed motion for partial summary judgment as to the due process claim on or before November 22, 2013. *See Ingram v. S.C.I. Camp Hill*, 448 Fed. Appx. 275, 278 (3d Cir. 2011) (finding that district court did not abuse its discretion in permitting defendants to file a renewed motion for summary judgment after case reassignment where doing so would prevent needless presentation of futile claims to the jury).

3

necessary to consider the elements that Plaintiff will need to prove to succeed on his claim at trial.² Plaintiff challenges the conditions of his confinement based on the alleged denial of access to showers and outdoor exercise for 82 days. A prisoner making a conditions-of-confinement claim must prove that (1) objectively, the deprivation was so serious that it resulted in the denial of "the minimal civilized measure of life's necessities," and (2) the defendant was "deliberately indifferent" to the risk to the prisoner. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Proving "deliberate indifference" requires two steps. First, Plaintiff must show that the Defendants "kn[ew] that [he] face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Royster v. Beard*, No. 09–1150, 2011 WL 1085973, at *6 (W.D. Pa. Feb. 28, 2011). While "it is not sufficient that the official should have been aware" of the risk, "subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842). Second, Plaintiff must show that the prison officials did not act reasonably in imposing the restriction, in spite of the known or obvious risk. *See Farmer*, 511 U.S. at 844.

In addition to the elements of Plaintiff's claim, the Court must also be mindful of the procedure through which Plaintiff must seek to obtain the appearance of any inmate-witnesses at trial. The Court has the discretionary power to issue a writ of habeas corpus ad testificandum to secure the appearance of a state or federal prisoner only if "[i]t is ***necessary*** to bring [the inmate]

---

2. Because the Court has granted Defendants leave to file a renewed motion for summary judgment as to Plaintiff's due process claim, *see supra* note 1 and ECF No. 47, it will not consider at this time whether any of the proffered testimony is relevant to that claim. Specifically, Defendants seek to prevent Henry and Mohamed from testifying about their misconduct histories – testimony which Plaintiff claims is relevant to proving he suffered an "atypical and significant hardship." The Court will reserve ruling on that issue pending the outcome of the renewed motion for summary judgment.

4

into court to testify . . . ." 28 U.S.C. § 2241(c)(5) (emphasis added). The Court's decision whether to issue the writ is reversible only if it abuses its discretion. *Bailey v. Blaine*, 183 Fed. Appx. 220, 223 (3d Cir. 2006) (unpublished) (citation omitted). Our Appellate Court has set forth several guideposts to aid in the exercise of that discretion. The Court must consider, *inter alia*, the costs and convenience of procuring the inmate's appearance, the potential security risk posed by the particular inmate, the need for the inmate's testimony, the substantiality of the matter at issue, and the interests of the prisoner in having the proffered testimony presented on his behalf. *Jerry v. Francisco*, 632 F.2d 252, 255-56 (3d Cir. 1980) (citations omitted). "Furthermore, the Court may also preclude deposition testimony of inmate witnesses if it is repetitious or cumulative." *Watts v. Hawkins-Sawyer*, No. 3:02 64, 2005 WL 2133676, at *1 (citing *Brown v. Frame*, 1985 WL 3415 (E.D. Pa. 1983). With this background in view, the Court will now consider the proffered testimony of each potential inmate-witness in turn.

### A. Testimony about the RRL (Henry and Mohamed)

Defendants contend that the proposed testimony from Henry and Mohamed related to the RRL is not relevant because Plaintiff is not challenging his placement on the RRL. Plaintiff argues that the testimony is relevant because "[f]or a person on the RRL, the restrictions [imposed on him were] more harmful than for a person able to return to society or general population." Pl.'s Resp. 5 (ECF No. 45). The Court agrees that testimony about the nature of the RRL could be relevant because the deprivation of outdoor exercise might have a greater effect on a prisoner who faces indefinite segregation from the general population than the average prisoner. *See Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994) (explaining that where plaintiffs "were in long-term incarceration . . . in continuous segregation, generally spending twenty-four hours each day alone in their cells . . . deprivation of outdoor exercise constituted

5

cruel and unusual punishment"). However, Plaintiff has not shown that the testimony of Henry or Mohamed regarding the workings of the RRL would be anything more than cumulative and duplicative of his own testimony on this point. *See Watts*, 2005 WL 2133676, at *1. Thus, neither of these inmates will be permitted to testify about the RRL.

### B. Testimony about Sauers' Alleged Racism (Maple and Coffey)

Plaintiff argues that Maple and Coffey should be permitted to testify about multiple occasions on which they allegedly heard Defendant Sauers direct racial epithets at African-American inmates to show that her decision to continue the cell restriction after Defendant Barone's retirement was motivated by racial animus. Defendants contend that this testimony is not relevant. The Court agrees.

To prove his Eighth Amendment claim, Plaintiff must show that Defendants acted with deliberate indifference, which in this case would mean that Sauers knew Plaintiff faced a substantial risk of serious harm because of the lengthy cell restriction – or that the risk was obvious – and yet still decided to maintain the restriction. *See, e.g.*, *Ekene v. Cash*, No. CV11–9318–DDP, 2013 WL 2468387, at *7 (C.D. Cal. June 7, 2013) (explaining that jury could find that defendant acted with deliberate indifference where plaintiff, who was denied a shower and yard privileges for three months, advised defendant that he was suffering rashes but defendant declined to take any action.). However, stray remarks like those allegedly made by Sauers "do[] not demonstrate deliberate indifference." *Eames v. Johns*, No. 5:10–CT–3136–D, 2012 WL 174476, at *3 (E.D.N.C. Jan. 20, 2012) (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1999)); *see also Robinson v. Taylor*, 204 Fed. Appx. 155, 156 (3d Cir. 2006) ("[V]erbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment[.]"). Even assuming that the alleged statements could be relevant for that purpose, the alleged statements were so far

6

removed from the decision to keep the cell restriction in place as to lack any probative value. They were not directed toward Plaintiff, and there is nothing to suggest that they were even made during the timeframe in which Sauers was deciding whether to keep the cell-restriction in place. As a result, the Court finds that testimony related to the alleged racist comments is not admissible.

## C. Testimony about Alleged Denial of Grievance Forms (Coffey, Huertas, Tillery, Jenkins, and Harris)

Plaintiff argues that Coffey, Huertas, Tillery, Jenkins, and John Harris should be permitted to testify that SCI-Forest staff repeatedly denied his requests for grievance forms. The Court finds that Plaintiff has failed to sufficiently explain how the alleged denial of access to such forms is relevant or necessary to sustain his claim. *See Gordon v. Woodring*, No. C 04-04182 JF, 2005 WL 464636, at *1 (N.D. Cal. Feb. 28, 2005) (explaining that before permitting an inmate to testify, "the district court must determine not only whether an inmate-witness' testimony is relevant, but also, whether such testimony is necessary"). Even assuming that this testimony could be marginally relevant, Plaintiff has not clarified how these inmates were entitled to or knowledgeable of this information. Indeed, as Defendants point out, Coffey was not even incarcerated at SCI-Forest until 2011, months after the alleged denial of grievance forms concluded in May 2010. Testimony regarding the denial of grievance forms will not, therefore, be permitted from these potential witnesses.

## D. Testimony to Challenge Misconduct Findings (McClary and Williams)

Plaintiff seeks to have McClary and Williams testify about the incidents that gave rise to a series of misconducts that Plaintiff received leading up to the imposition of cell restrictions, in essence challenging the factual basis of the misconducts. The Court agrees with Defendants that such testimony is irrelevant, as this is not the proper venue for Plaintiff to challenge his

7

misconducts. It is Barone's *awareness* of Plaintiff's disciplinary history that is relevant for the purpose of determining whether Barone's conduct was reasonable, not whether the conduct for which Plaintiff was disciplined actually took place as set forth in the DOC's records. *See Womack v. Smith*, No. 1:06-CV-2348, 2012 WL 1245752, at *5 (M.D. Pa. Apr. 13, 2012) (explaining that inmate's disciplinary record was relevant "[t]o the extent [it] influenced defendants' decisions regarding use of restraints on [plaintiff]"). Therefore, McClary and Williams will not be permitted to testify.

### E. Testimony about the Alleged Deprivation of Food and Water (Huertas, Tillery, Jenkins, and John Harris)

The Court recognizes that evidence related to the denial of food and running water in Plaintiff's cell is relevant to his conditions-of-confinement claim.[3] *See, e.g.*, *Banks v. Monzingo*, 423 Fed. Appx. 123, 127-28 (3d Cir. 2011) (listing running water among life's basic necessities, the deprivation of which could give rise to an Eighth Amendment violation); *Griffin*, 112 F.3d at 709 (describing food and sanitation as basic human needs). A jury could find that even though Plaintiff was unable to access a shower, he was not deprived of basic hygienic needs because he still had access to other means of cleaning himself. *See Shakka v. Smith*, 71 F.3d 162, 168 (4th Cir. 1995) (holding that denial of shower for several days was not cruel and unusual punishment because Plaintiff had other ways to clean himself); *Cruz v. Jackson*, No. 94 Civ. 2600, 1997 WL 45348, at *7 (S.D.N.Y. Feb. 5, 1997) (holding that although plaintiff was "denied showers for a finite time," there was no constitutional violation because "he had running water in his room"). Defendants seem to acknowledge the relevancy of evidence related to this point, as they note in

---

3. However, it is well settled that the denial of a single meal is not so significant as to give rise to an Eighth Amendment violation. *See Brown v. Varner*, No. 3:11–CV–1258, 2013 WL 4591817, at *18 (M.D. Pa. Aug. 28, 2013) (citations omitted). Likewise, "a brief interruption in water service to an inmate's cell does not, by itself, so deprive an inmate of the minimal civilized measure of life's necessities that it constitutes a violation of the Eight Amendment." *Id.* (citations and quotation marks omitted).

their pretrial statement that they intend to offer evidence that Plaintiff could wash himself in his sink. Consequently, to the extent that Huertas, Tillery, Jenkins, and John Harris could provide testimony to refute that contention, their testimony would be relevant to Plaintiff's claim.

Nevertheless, the Court is reluctant to permit these inmates to testify because, with one exception, Plaintiff has not offered any explanation as to how they came to know about what was allegedly happening to him in his cell. Without the benefit of such an explanation, the Court is left with serious doubts that the proposed inmate-witnesses have the level of personal knowledge required for them to testify on these matters. While they were housed in the same cell block in the RHU as Plaintiff, they were in different cells, and it is questionable whether they could view or otherwise perceive what was happening in Plaintiff's cell. *See U.S. v. Gerard*, 507 Fed. Appx. 218, 222 (3d Cir. 2012) (explaining that testimony should be excluded under Rule 602 if "no reasonable juror could believe that witness that the witness had the ability and opportunity to perceive the event that he testifies about").

The lone exception is Jenkins, who was in the cell next door to Plaintiff's and will testify that by May 2010 Plaintiff allegedly smelled so badly that Jenkins complained to staff about the odor emanating from Plaintiff's cell. From this testimony, a reasonable jury could infer that Jenkins had personal knowledge of Plaintiff's inability to bathe himself, contrary to Defendant's argument about his access to running water in his cell. Therefore, Jenkins will be permitted to testify.[4] As agreed upon by the parties at the telephonic pretrial conference on October 25, 2013, the Court will exercise its discretion and require Jenkins to appear at trial via videoconference.

---

4. Plaintiff also claims that Jenkins can testify that Plaintiff told a prison psychologist that he experienced suicidal thoughts as a result of the restrictions. This portion of Jenkins' testimony seems to be solely based on hearsay – i.e. Jenkins only knew about what Plaintiff said to psychologist because Plaintiff told him about it. Therefore, although Jenkins will be permitted to testify, he will not be permitted to testify about any alleged communications between Plaintiff and the psychologist. *See* Fed. R. Evid. 802 (explaining that with certain exceptions, out-of-court statements offered for their truth are not admissible).

9

*See Thornton v. Snyder*, 428 F.3d 690, 698 (7th Cir. 2005) (holding that district court did not abuse its discretion in conducting trial by video conference where inmate-witnesses were "scattered all over the state").

Before deciding whether Huertas, Tillery, and John Harris will be allowed to testify about the denial of food and running water, the Court will give Plaintiff an additional opportunity to explain the basis for their testimony. **On or before December 9, 2013**, he may submit a more detailed proffer about the proposed testimony of these witnesses in order to demonstrate that their testimony would be based on their personal knowledge of the alleged occurrences. If, upon review of Plaintiff's explanation, the Court determines that there is not sufficient evidence upon which a jury could find that the witnesses had personal knowledge – i.e., that they perceived or witnessed the acts in question and are not basing their testimony solely on what Plaintiff told them – their testimony will be precluded. Otherwise, the Court will permit Plaintiff to call *one* of these three inmates to testify via videoconference, as the testimony of all these inmates on this same point would be unnecessarily cumulative.

**F.    Miscellaneous Testimony**

1.    Testimony about Staff Encouraging Other Inmates to Harm Plaintiff (Watts)

Plaintiff contends that Watts will testify that SCI-Forest staff encouraged him and others to harm Plaintiff, going so far as to give Watts the home address of Plaintiff's mother. Plaintiff claims that when these facts were brought to Defendant Sauers' attention, she did nothing to stop it, which shows that she "hates Plaintiff." Pl.'s Resp. 8 (ECF No. 45). Defendants have not specifically responded to Plaintiff's argument as to the need for this testimony. Nonetheless, the Court has concluded that Plaintiff has failed to sufficiently explain how this testimony is relevant, let alone necessary. As the Court has repeatedly emphasized, the issues in this case are

relatively straightforward and not complicated. Defendants do not dispute that the restrictions were applied; the critical question a jury will be left to decide is whether Barone and Sauers acted with deliberate indifference – i.e., whether they knew the risk of harm posed by the restrictions, yet failed to stop them. Any discussion of these other alleged incidents involving inmate Watts would only serve to confuse the jury's consideration of the primary issue. Therefore, Watts will not be permitted to testify.

2. Testimony about Offer of Cell with Built-in Shower (John Harris)

According to Plaintiff, prospective inmate-witness John Harris will be able to testify that he had a cell with a built-in shower and told a corrections officer that he would switch cells with Plaintiff, so as to enable Plaintiff to use a shower rather than continue to wash himself in his in-cell sink. Defendants do not dispute that such cells existed. In fact, they appear to have taken the position that even if such cells were available, Plaintiff would have remained where he was. In view of that, John Harris' testimony is unnecessary. However, Plaintiff remains free to argue that Defendants' conduct was not reasonable and that they could have lessened the allegedly harmful effects of the shower restriction by placing him in a cell with a built-in shower.

C. Conclusion

For the foregoing reasons, Defendants' motion in limine will be **GRANTED IN PART**, **DENIED IN PART**, and **RESERVED IN PART**. To briefly summarize the conclusions stated above, the Court notes the following. First, Maple, Coffey, and Watts *will not* be permitted to testify on any subject. Second, Jenkins *will* be permitted to testify via videoconference but only for the limited purpose described above. Third, Mohamed and Henry *may* be permitted to testify relative to Plaintiff's procedural due process claim, pending the outcome of Defendants' renewed motion for summary judgment as to that claim. Assuming that Plaintiff's due process claim is

not dismissed, Plaintiff may renew his arguments with respect to the need for the testimony of Mohamed and Henry by filing a motion for writ of habeas corpus ad testifcandum prior to trial outlining the need for their testimony.  Fourth, Huertas, Tillery, Jenkins, and John Harris *may* be permitted to testify regarding the alleged deprivation of food and water.  Plaintiff is directed to file a more detailed proffer explaining how these witnesses were able to find out about the deprivation of food and water and why that information is necessary to sustain his claim**.**

    An appropriate Order follows.

                                                                McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID HARRIS,
   Plaintiff,

v           1:11-256

MICHAEL BARONE and DEBRA SAUERS,
*SUED IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES*,
   Defendants.

## ORDER OF COURT

**AND NOW**, this 21st day of November 2013, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED** and **DECREED** that DEFENDANTS' MOTION IN LIMINE RE: INMATE WITNESSES is **GRANTED IN PART**, **DENIED IN PART,** and **RESERVED IN PART**:

1. Inmates Coffey, Maple, and Watts will not be permitted to testify;

2. Inmate Jenkins will be permitted to testify by videoconference for the limited purpose set forth in the accompanying Memorandum Opinion;

3. A ruling on the admissibility of testimony from Inmates Mohamed and Henry is reserved pending the outcome of Defendants' renewed motion for summary judgment; and

4. A ruling on the admissibility of testimony from Inmates Huertas, Tillery, and John Harris relative to the alleged deprivation of food and water is reserved pending the submission of Plaintiff's more detailed proffer as to the personal knowledge of these witnesses on or before December 9, 2013.

            BY THE COURT:

            s/Terrence F. McVerry
            United States District Judge

cc: **DAVID HARRIS**
   FC7039

SCI ALBION
10745 ROUTE 18
ALBION, PA 16475

**Mary Lynch Friedline, Esquire**
Email: mfriedline@attorneygeneral.gov