IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID HARRIS,<br>               **Plaintiff,**<br><br>               v.<br><br>MICHAEL BARONE and DEBRA SAUERS,<br><br>             **Defendants.** | )<br>)<br>)<br>)  1:11-cv- 256<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Pending before the Court is the MOTION FOR SUMMARY JUDGMENT AS TO PROCEDURAL DUE PROCESS CLAIM (ECF No. 50) filed by Defendants, Michael Barone ("Barone") and Debra Sauers ("Sauers"), the former and current superintendents of the State Correctional Institution ("SCI") at Forest, respectively. Defendants have filed a brief in support of their motion (ECF No. 51). David Harris ("Plaintiff") has filed a brief in opposition (ECF No. 56). In addition, the factual record has been developed via the parties' concise statements of material facts ("CSMF") (ECF Nos. 51 and 55). Accordingly, the motion is ripe for disposition.

### I.    Background

#### A.    Facts

Plaintiff, an inmate presently incarcerated at SCI-Albion, brings this *pro se* lawsuit pursuant to 42 U.S.C. § 1983, averring that Defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution by prohibiting him from showering, shaving, and exercising outdoors for a period of 82 days. This case arose when Plaintiff, who is serving a life sentence, was incarcerated at SCI-Forest in Marienville, Pennsylvania. On or about January 31, 2008, Plaintiff was transferred to SCI-Forest after he violently assaulted a female staff member at SCI-Greene in December 2007. Because of his history of assaultive

1

behavior, Plaintiff was housed in the Restricted Housing Unit ("RHU") on disciplinary custody status. He was also on the Restricted Release List, which meant that he could not be released back into the general population without prior approval from the DOC Secretary.

Plaintiff's assaultive behavior toward staff continued at SCI-Forest, with the incidents reportedly occurring while Plaintiff was in the exercise yard or showers or while being transported to such locations. After the last such incident, which occurred on March 5, 2010, Lieutenant Gill recommended to Defendant Barone, who was then the prison's superintendent, that several of Plaintiff's privileges be restricted.[1] In view of Plaintiff's history of assaultive behavior, Defendant Barone agreed with the recommendation and directed that Plaintiff be denied outdoor exercise, shaving, and shower privileges for 90 days, beginning immediately.[2]

At some time later on March 5, Plaintiff requested to use the shower and was denied. A few days later, on March 8, Plaintiff requested to be able to use the yard. This request was also denied. It is unclear from the record whether Plaintiff was informed on either of these occasions why he was being denied these privileges. On March 15, however, Plaintiff asked Lieutenant Dietrich why he was not being permitted to go to the yard and was informed about the restrictions.

The next day, Plaintiff sent a DC-135A form to Defendant Barone, complaining about the restrictions. Defendant Barone retired from his position as superintendent in late March and was replaced by Defendant Sauers on March 28. After Plaintiff learned of Barone's retirement, he sent a DC-135A form to Defendant Sauers asking him to put an end to the restrictions. Having

---

1. Under DOC policy, an inmate may not be placed under exercise and shower restrictions for longer than seven days without approval by the facility manager.

2. The following other restrictions, which Plaintiff has not challenged, were also imposed upon him: spit mask, secure food pass, videotape of movements, and the presence of a commissioned officer during movements.

failed to receive a prompt response from Sauers, Plaintiff sent a follow-up request on April 10. In addition, on April 22, he sent a letter to former DOC Secretary Jeffrey Beard ("Beard"), asking him to intervene to reinstate Plaintiff's exercise, shaving, and shower privileges.[3] Plaintiff's letter triggered a DOC investigation, after which the restrictions were nevertheless kept in place.

On May 13, 2010, Plaintiff filed a formal grievance, complaining that he had been denied shower and yard privileges for 69 days by that point. He also complained that during this period he made several requests to be moved into a cell equipped with a shower and yard pen and that he was rebuffed by Lieutenant Murin ("Murin") each time. Captain Ireland wrote an initial response to Plaintiff's grievance, indicating that Murin was merely following Defendant Barone's orders when he refused Plaintiff's cell change request. As a result, the grievance was considered resolved. Captain Ireland's response was subsequently upheld on appeal.

On May 27, 2010, the Program Review Committee ("PRC") met with Plaintiff to review his DC status.[4] Based on its review, the PRC, with Defendant Sauers' approval, decided to lift the outdoor exercise and shower restrictions but recommended that the other restrictions remain in place.

B.     **Procedural History**

Plaintiff initiated this action on October 26, 2011, naming Barone, Sauers, Murin, and

---

3.     The letter to Secretary Beard also indicates that Plaintiff was not permitted to attend the law library. He appears to no longer be pursuing this aspect of his claim. In any event, the response to Plaintiff's grievance indicates that during the period in which the restrictions were imposed, he never requested to use the law library, so it is unclear whether he was actually denied the use of such privileges.

4.     The PRC was originally supposed to review Plaintiff's status 90 days after the challenged restrictions were imposed. However, it appears that after the filing of Plaintiff's May 13 grievance, Defendant Sauers asked the Committee to review the restrictions earlier and make a recommendation as to whether they should be continued based on Plaintiff's recent behavior.

3

Beard as Defendants. The case was initially assigned to former Chief United States District Judge Sean McLaughlin.

Upon the completion of discovery, Defendants filed a motion, seeking the entry of partial summary judgment in favor of Defendants Beard and Murin based upon their lack of personal involvement in either alleged constitutional violation (ECF No. 26). The motion was referred to Magistrate Judge Susan Paradise Baxter, who recommended that it be granted (ECF No. 32). On January 15, 2013, former Chief Judge McLaughlin adopted Magistrate Judge Baxter's Report and Recommendation and thereby granted summary judgment for Beard and Murin (ECF No. 34). As a result, the case was slated for trial against only Defendants Barone and Sauers.

On August 28, 2013, the case was re-assigned to the undersigned Judge after former Chief Judge McLaughlin retired. The Court held a telephonic pretrial conference with Defense counsel and Plaintiff on September 9, 2013, and a supplemental telephonic pretrial conference on October 25, 2013. At the second conference, the Court noted that there was some uncertainty as to whether Plaintiff intended to continue to pursue his Fourteenth Amendment procedural due process claim. Upon learning that Plaintiff did intend to pursue that claim, the Court advised the parties that certain issues related to that claim needed to be addressed as a matter of law prior to trial. Defendants then made an oral motion for leave to file a renewed motion for summary judgment as to this aspect of the case, which the Court granted. This motion followed on November 20, 2013.

## II. Standard of Review

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

4

of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The nonmoving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citing *Liberty Lobby*, 477 U.S. at 249). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Distilled to its essence, the summary judgment standard requires the nonmoving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

### III. Discussion

The Fourteenth Amendment prohibits a state from depriving a "person of life, liberty or property, without due process of law." U.S. Const. Amend. XIV, § 1. The threshold question in analyzing any procedural due process claim is whether the plaintiff was deprived of a property or liberty interest accorded constitutional protection. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) (citing *Fuentes v. Shevin*, 407 U.S. 67 (1972)). If the plaintiff establishes that he was deprived of such an interest, "the question then becomes what process is due to protect it." *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The Court will address each of these requirements in due order.

#### A. Existence of a Protected Liberty Interest

Defendants argue that they are entitled to summary judgment because Plaintiff has failed to establish the existence of a protected interest. Plaintiff has not alleged that he was deprived of a property interest, so the Court will consider only whether he has established the existence of a

constitutionally recognized liberty interest. The determination of whether a liberty interest exists is a question of law. *See Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999).

"Liberty interests protected by the Fourteenth Amendment may arise from two sources – the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). The Due Process Clause does not create a liberty interest in avoiding placement in restrictive prison conditions, but "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations, subject to the important limitations set forth in *Sandin v. Conner*, 515 U.S. 472 (1995)[.]" *Wilkinson v. Austin*, 545 U.S. 209, 222 (2005) (citations omitted).

In the *Sandin* case, the Supreme Court considerably narrowed the scope of liberty interests to be recognized in the state-prison context. Before *Sandin*, courts were tasked with reviewing the specific language of the relevant prison regulation to determine whether it was so "unmistakably mandatory" in character so as to have "created an enforceable expectation" that it would be adhered to under all circumstances. *Sandin*, 515 U.S. at 477-81 (citations omitted). The *Sandin* Court did away with that mechanical approach, shifting the inquiry from the specific language of the regulation to whether the deprivation imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 483. Applying that test to the facts before it, the *Sandin* Court held that the prisoner, Conner, did not have a liberty interest in remaining free from disciplinary detention because his thirty-day confinement, albeit "punitive, d[id] not present a dramatic departure from the basic conditions of [his] indeterminate sentence." *Id.* at 485.

"In deciding whether a protected liberty interest exists under *Sandin*," this Court must "consider the duration of the disciplinary confinement and the conditions of that confinement in

6

relation to other prison conditions." *Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir. 2003) (citing *Shoats*, 213 F.3d at 144). This requires the Court to determine, as an initial matter, what the appropriate "baseline" for comparison is. *See Shoats*, 213 F.3d at 144 (explaining that "atypicality" is determined by asking "whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement"); *Leamer v. Fauver*, 288 F.3d 532, 546 (3d Cir. 2002) (explaining that "a court must assess whether administrative segregation, or its concomitant conditions, constitute an 'atypical and significant hardship' by comparing the circumstances of [the prisoner's] placement with those of others within comparable confinement"). The parties do not dispute that inmates in administrative and disciplinary custody typically receive three showers per week and are allotted five hours of exercise per week. As already noted, however, these privileges may be restricted for up to seven days without approval from the facility manager and for longer periods with such approval. While the limited factual record before the Court makes it impossible to determine how frequently such restrictions are imposed, it is reasonable to assume that inmates in administrative or disciplinary custody can expect to face some disruption in their access to showers and exercise depending on their behavior.

No matter the precise baseline, Plaintiff's conditions seem to be a considerable departure from that which other prisoners in similar forms of confinement were facing. Indeed, Defendants concede that restrictions as long and severe as those imposed on Plaintiff have rarely, if ever before, been utilized at SCI-Forest. Furthermore, prohibiting an inmate from leaving his cell for 82 days without access to showers and exercise imposes a significant hardship, especially where, as here, the inmate is confined in segregated housing for an indefinite period of time. In fact, such conditions have been found to amount to Eighth Amendment violations, in and of

7

themselves. *See, e.g.*, *Delaney v. DeTalla,* 256 F.3d 679, 683-84 (7th Cir. 2001) (explaining that long term lack of exercise can rise to the level of an Eighth Amendment violation).

The Court recognizes that our appellate court has held that placement in restricted confinement for periods longer than 82 days does not trigger due process protections. *See, e.g.*, *Smith v. Mensinger*, 293 F.3d 641, 645 (3d Cir. 2002); *Griffin v. Vaughn*, 112 F.3d 703, 706-08 (3d Cir. 1997). As Plaintiff correctly argues, however, *Griffin* and *Smith* are distinguishable from this case because in each of those cases the prisoner was housed under "normal" conditions in the RHU: he could shower at least three times per week and was given five hours of outdoor exercise per week. By contrast, in addition to experiencing the usual deprivations associated with life in the RHU, Plaintiff was restricted from using the showers and engaging in outdoor exercise for 82 days. These additional restrictions, taken together with the "normal," already restrictive conditions in the RHU, unquestionably bolster Plaintiff's claim to a protected liberty interest. *See Ortiz v. McBride*, 380 F.3d 649, 654-55 (2d Cir. 2004) (holding that although lengthy confinement under "normal" conditions in segregated housing unit did not satisfy *Sandin*'s standard, the plaintiff could survive a Rule 12(b)(6) motion with allegations that he was confined "for twenty-four hours a day, was not permitted an hour of daily exercise, and was prevented from showering 'for weeks at a time'").

Defendants cite several other cases in which courts have held that a lengthy restriction on outdoor exercise does not, by itself, give rise to a protected liberty interest: *Morissette v. Ramos*, No. 94-3426, 1996 WL 521170, at *4 (N.D. Ill. 1996) (63-day restriction); *Fantone v. Herbik*, 528 Fed. Appx. 123 (3d Cir. 2013) (35-day restriction); *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (6-month restriction); *Saleh v. U.S.*, No. 09-02563, 2011 WL 2682803, at *13 (D. Colorado March 8, 2011) (90-day restriction). These cases are similarly unpersuasive, however.

8

In each case, while the prisoner was deprived of yard privileges, he could still leave his cell for other reasons, including in order to use the showers. Having other opportunities to leave the cell mitigated the effects of the restriction on outdoor exercise, as the courts in these cases recognized. *See, e.g.*, *Morissette*, 1996 WL 521170, at *4 (noting that "Morissette still could exercise within his cell and on trips to the law library, showers and health care unit"). By contrast, such opportunities were not available in this case since Plaintiff could not leave his cell to shower *or* exercise for 82 days. In fact, it is not clear from the record whether Plaintiff could leave his cell *for any reason* during this period, though there is some indication that he could. *See* Def.'s Answer ¶ 11 (ECF No. 15) (stating that "RHU inmates also have opportunities to leave their cells at additional times for a variety of privileges, for hearings, for medical care, etc.").

In sum, although each of the challenged restrictions, alone, may not have created a protected liberty interest, the Court is not permitted to view the conditions of Plaintiff's confinement in isolation. *See Wilkinson*, 545 U.S. at 224 (concluding that while certain conditions – indefinite placement in Supermax facility which entailed limitation on human contact and exercise, 24-hour lighting, and ineligibility for parole – "standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship"). Rather, the combined effect of the restrictions must be considered, along with their duration. *Id.* Having considered the combined effect of the restrictions and the duration in which they were imposed, and viewing the facts in the light most favorable to Plaintiff, the Court concludes that the restrictions imposed an "atypical and significant hardship."

### B. Due Process Requirements

Nevertheless, in order to survive summary judgment, Plaintiff must still establish that the

procedures used to deprive him of his protected interest were constitutionally inadequate. He has failed to make such a showing.

The restrictions at issue here were imposed after Plaintiff received a misconduct on March 5 for spitting on a corrections officer – the latest in a long line of incidents in which Plaintiff behaved inappropriately. The misconduct report for this incident indicates that Plaintiff was notified of the charge and provided with forms that would allow him to present witnesses at a hearing and provide his version of events. Plaintiff does not dispute that he received such notice. A disciplinary hearing was held on March 10, at which time Plaintiff could have questioned why he was not allowed to use the showers or yard on March 5 and 8. However, he waived his right to attend the hearing. With the charge undisputed, the hearing officer found Plaintiff guilty based on the report of the corrections officer and sanctioned Plaintiff to 90 days of disciplinary confinement, to be served consecutively to his prior term of disciplinary confinement which he was serving for his various other infractions. The record also reveals that Plaintiff was informed on March 15 that he would be restricted from using the showers and having outdoor exercise. The next day, he availed himself of the first step of the DOC's grievance procedures, writing Defendant Barone and then, upon learning of Barone's retirement, twice writing Defendant Sauers to inquire about his status. He also sent a letter to Secretary Beard, at which point an investigation into the restrictions was undertaken. Eventually, after the filing of his grievance on May 13, Plaintiff DC status was reviewed by the PRC on May 27, 2010, and the challenged restrictions were lifted.

These procedures were constitutionally adequate. Plaintiff had notice of the disciplinary charge against him and an opportunity to contest it. Indeed, in light of his history of assaultive behavior during trips to the showers and the yard, he could hardly argue that he did not know

why the restrictions were being imposed. Thereafter, he was able to resort to the grievance process to complain about the conditions and had his status reviewed by the PRC. Plaintiff claims that Defendant should have provided him with notice and a hearing as to Defendant Barone's specific reasons for placing the restrictions on him prior to the imposition of the restrictions. However, due process does not require that an inmate be provided with specific notice regarding the conditions under which his disciplinary confinement will be served when he is given notice of the charges against him and an opportunity to respond to them. *Cf. Casper v. Baker*, No. 12-00204, 2014 WL 177436, at *11 (holding that inmate was not entitled to notice and hearing prior to placement in "special isolation cell" where he was "well aware of the charges against him and had a meaningful opportunity to contest those charges through his disciplinary proceedings"). Instead, the requirements of the due process clause must be applied flexibly in the prison setting, in light of the difficulty of the conditions under which prison officials are operating. *See Boone v. Nose*, No. 12-1370, 2013 WL 819730, at *7 (W.D. Pa. Mar. 5, 2013) *aff'd*, 530 Fed. Appx. 112 (3d Cir. 2013). Requiring Defendant Barone to hold back-to-back disciplinary hearings – one addressing the general sanction, and another the specific restrictions imposed on Plaintiff in light of his particular behavior issues – would have run afoul of that principle. The Court is not in a position to second guess the course of conduct chosen by Defendants in light of Plaintiff's assaultive behavior.

In summary, although Plaintiff may have had a protected liberty interest in the conditions of his confinement, the procedures employed to deprive him of that interest comported with the requirements of the due process clause. Accordingly, Defendants are entitled to summary judgment on this aspect of the case, and their pending motion will be granted.

## IV. Conclusion

In accordance with the foregoing, Defendants' MOTION FOR SUMMARY JUDGMENT AS TO PROCEDURAL DUE PROCESS CLAIM (ECF No. 50) will be **GRANTED**. The case will proceed to trial only with respect to Plaintiff's Eighth Amendment conditions-of-confinement claim. An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID HARRIS,<br><br>   Plaintiff,<br><br>  v.<br><br>MICHAEL BARONE and DEBRA SAUERS,<br><br>   Defendants. | 1:11-cv- 256 |

## ORDER OF COURT

AND NOW, this 3rd day of February, 2014, for the reasons set forth in the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED** and **DECREED** that Defendants' MOTION FOR SUMMARY JUDGMENT AS TO PROCEDURAL DUE PROCESS CLAIM (ECF No. 50) is **GRANTED**.

                BY THE COURT:

                s/Terrence F. McVerry
                United States District Judge


cc: **David Harris**
   FC7039
   SCI-Albion
   10745 Route 18
   Albion, PA 16475
   (via First Class mail)

   **Mary Lynch Friedline, Esquire**
   Email: mfriedline@attorneygeneral.gov
   (via CM/ECF)