# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| DAVID HARRIS, | ) |
|---|---|
| Plaintiff, | ) |
| | ) |
| v. | ) 1:11-cv- 256 |
| | ) |
| MICHAEL BARONE and DEBRA SAUERS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Pending before the Court is DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 74) filed, with leave of Court, by Michael Barone and Debra Sauers ("Defendants"), two former superintendents of SCI-Forest. Defendants filed a brief and concise statement of material facts ("CSMF") in support of their motion (ECF Nos. 75, 76). David Harris ("Plaintiff"), a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), was ordered to file a response to Defendants' motion on or before May 12, 2014 (ECF No. 73). To date, however, no response has been filed.[1]

**I.  Background**

This Court has already written extensively on this case. Thus, only those facts relevant to deciding the present motion will be set forth herein.

---

[1] On April 14, 2014, the Court attempted to mail two Orders to Plaintiff via First Class U.S. Mail. Both were returned to the Court with the notation "inmate refused legal mail." Therefore, in an effort to ensure that Plaintiff had notice that his trial was being continued and that he would have an opportunity to respond to Defendants' supplemental motion for summary judgment, the Court sent the Order granting Defendants' motion for leave to file a supplemental motion for summary judgment, setting the date by which Plaintiff had to file a response, and continuing the trial by facsimile to Plaintiff's prison counselor, who in turn agreed to provide it to Plaintiff. On May 27, 2014, Plaintiff's counselor informed the Court by telephone that she provided the Order to Plaintiff on April 24, 2014, during her routine rounds. Although Plaintiff received the Order requesting a response, he has not complied with it. Since Plaintiff failed to filed a response specifically denying "or otherwise controvert[ing]" the material facts alleged in Defendants' CSMF, those facts will be deemed admitted for the purposes of deciding this motion. *See* LCvR 56.E.

1

Plaintiff was transferred to SCI-Forest in early 2008, after he committed a violent assault on a female counselor while he was in custody at SCI-Fayette. The counselor had to be life flighted to the hospital following the incident.

After his transfer to SCI-Forest, Plaintiff committed a series of assaults of prison staff and other inmates, each of which occurred while Plaintiff was either exercising or using the showers. Specifically, on September 4, 2009, while he was being taken out of his cell to exercise, he pulled away from the escorting officers and kicked a nearby inmate in the back. After moving the other inmate back to his cell, the officers forcibly placed Plaintiff into an exercise cage, and Plaintiff responded by spitting on the officers. On September 7, 2009, Plaintiff spat on two corrections officers while he was using the showers. On December 15, 2009, corrections officers found a piece of sharpened metal hidden in Plaintiff's mattress. A month later, on January 13, 2010, Plaintiff spat on another officer while he was being moved to the showers.[2] On February 17, 2010, while placed in the exercise cage, Plaintiff attempted to pull the escorting officer into the cage with him, and when that failed, he spat on the officer's face.[3] Finally, on March 5, 2010, Plaintiff, again while in the exercise cage, spat on the face of two officers who were escorting another inmate into an adjacent cage.

After the last incident, Lieutenant Gill recommended that Plaintiff be placed under extended restrictions, including on outdoor exercise and showers.[4] Gill's recommendation was

---

[2] Plaintiff received a seven-day restriction on showers and outdoor exercise after the January 13, 2010, incident.

[3] Plaintiff received another seven-day restriction on showers and outdoor exercise after the February 17, 2010, incident.

[4] As the Court has previously noted, inmates on disciplinary custody ("DC") status in the RHU, such as Plaintiff, are typically allotted five hours of exercise per week. Under DOC policy, however, this privilege may be restricted for disciplinary reasons. Restrictions that do not exceed seven days can be imposed without approval by the facility manager, while longer restrictions must receive such approval. Moreover, inmates in the RHU are typically allowed to shower three times per week, but, as is the case with outdoor exercise, this privilege may also be restricted for disciplinary reasons.

referred to Defendant Barone, who had to approve the restrictions before they went into effect because they exceeded seven days. Barone was aware of Plaintiff's history of assaults. He was also aware of Plaintiff's attack at SCI-Fayette, which precipitated his transfer to SCI-Forest. Barone thus signed off on Lt. Gill's recommendation, and Plaintiff's shower and outdoor exercise privileges were suspended for 90 days. According to Barone, the Program Review Committee ("PRC") was scheduled to review Plaintiff's status in 90 days to decide whether the restrictions should be lifted.

Defendant Barone retired as the prison's superintendent on March 28, 2010, and was replaced by Defendant Sauers. At that time, Sauers was not specifically made aware of the restrictions on Plaintiff's privileges, though Plaintiff alleges that he sent two DC-135A forms to Sauers asking her to put an end to the restrictions. In mid-May 2010, Plaintiff filed a grievance about the restrictions, complaining that he had been "prohibited from showering, attending yard, and utilizing the law library materials for 69 days consecutively."[5] A grievance coordinator processed the grievance on May 18 and brought it to Sauers' attention. Although the PRC was originally not scheduled to review Plaintiff's status for another few weeks, Sauers decided to accelerate the review process. To that end, the PRC met with Plaintiff on May 27, 2010. After the meeting, the PRC recommended that the outdoor exercise and shower restrictions be lifted; however, the other restrictions (secure food pass, videotaped movements, and presence of commissioned officer for escorts) remained in place.

Plaintiff initiated this action on December 12, 2011, by filing a Complaint which named Barone, Sauers, Lt. Murin, and Department of Corrections ("DOC") Secretary James Beard as

---

[5] Defendants deny that Plaintiff was ever denied access to law library materials, and the denial of access to library materials is not an aspect of Plaintiff's Eighth Amendment claim.

3

Defendants.[6] Plaintiff alleged that the conditions of his confinement – specifically, the denial of access to showers and outdoor exercise for 82 days – violated the Eighth Amendment. He also claimed that Defendants violated his procedural due process rights by failing to afford him notice and an opportunity to be heard prior to imposing the restrictions.

On August 23, 2012, Defendants Beard and Murin moved for partial summary judgment on the ground that they were not personally involved in the alleged constitutional violations (ECF No. 26). The motion was referred to United States Magistrate Judge Susan Paradise Baxter, who recommended that it be granted (ECF No. 32). On January 15, 2013, former Chief District Judge Sean McLaughlin adopted the Magistrate's Report and Recommendation and summary judgment was entered on behalf of Beard and Murin (ECF No. 34).

On November 11, 2013, Defendants, with leave of Court, filed a second motion for partial summary judgment, arguing that Plaintiff had failed to establish a procedural due process violation. On February 3, 2014, the Court granted Defendants' motion. In doing so, the Court concluded that although the 82-day shower and exercise restrictions restrictions may have, in combination, amounted to a "significant and atypical hardship," Plaintiff was accorded all of the process that he was due prior to the imposition of the restrictions. Thus, the Court held that there was no procedural due process violation.

As a result, the case was scheduled for a jury trial only with respect to Plaintiff's Eighth

---

[6] Defendants Barone and Murin were named only in their individual capacities, while Sauers and Beard were named in their individual and official capacities, with Plaintiff requesting both damages and injunctive relief from them. Compl. ¶¶ 4-7 (ECF No. 5). Plaintiff's request for injunctive relief against Defendant Sauers in her official capacity (or, since she no longer serves in that role, against her successor as superintendent at SCI Forest, *see* Fed. R. Civ. P. 25(d)) related to his procedural due process claim, upon which the Court has already granted summary judgment. Insofar as Plaintiff is also pursuing a claim for money damages against Sauers in her official capacity, this aspect of his claim is barred by Eleventh Amendment immunity as it is essentially a suit against the state, itself. *See Johnson v. Wenerowicz*, 440 F. App'x 60, 62 (3d Cir. 2011) (non-precedential) (citations omitted) ("Because the Pennsylvania DOC is a part of the executive department of the Commonwealth of Pennsylvania, its employees share in the Commonwealth's Eleventh Amendment immunity to the extent that they were sued in their official capacities.").

Amendment conditions-of-confinement claim. The trial was set to commence on April 21, 2014.

Meanwhile, on April 4, 2014, Defendants filed a motion for leave to file a supplemental motion for summary judgment. In support of its motion, counsel for Defendants explained that, while preparing for trial, she discovered a case from the Seventh Circuit Court of Appeals, *Pearson v. Ramos*, 237 F.3d 881 (7th Cir. 2001), which is "directly on point" and could be dispositive of Plaintiff's remaining claim (ECF No. 67). The Court granted Defendants' motion and continued the trial generally pending the outcome of Defendants' supplemental motion (ECF No. 73). As previously noted, Plaintiff was ordered to file a response to Defendants' motion, but to date he has failed to do so.

## II.     Standard of Review

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). The nonmoving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citing *Liberty Lobby*, 477 U.S. at 249). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Distilled to its essence, the summary judgment standard requires the nonmoving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

## III. Discussion

Defendants argue that they are entitled to summary judgment because (1) the shower and outdoor exercise restrictions did not amount to substantial deprivations under the Eighth Amendment and (2) Plaintiff cannot establish deliberate indifference on the part of either them. Alternatively, they argue that they are entitled to qualified immunity.

### A. Merits of Plaintiff's Eighth Amendment Claim

The Eighth Amendment, as applied to the states through the Fourteenth Amendment, protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. The failure to provided inmates with humane conditions of confinement can in some cases amount to cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations omitted).

To prevail on a conditions-of-confinement claim, a plaintiff must prove two elements. *Id.* First, "the deprivation alleged must be, objectively, 'sufficiently serious[.]'" *Id.* at 834. As the Supreme Court has explained, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Prison officials must, therefore, ensure that inmates have access to adequate food, clothing, shelter, warmth, medical care, and exercise. *See Farmer*, 511 U.S. at 833; *Wilson*, 501 U.S. at 298. Second, the defendant "must have a 'sufficiently culpable state of mind,'" which in this context is "deliberate indifference." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297). Deliberate indifference means that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 837. This is a purely subjective standard, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the

6

official should have been aware." *Beers–Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). Nonetheless, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

1. **Objective Prong**

    a. **Outdoor Exercise[7]**

It is undisputed that Plaintiff was denied outdoor exercise for 82 days straight, although he typically would have been afforded five hours of outdoor exercise per week. The United States Court of Appeals for the Third Circuit has recognized "that meaningful recreation 'is extremely important to the psychological and physical well-being of inmates.'" *Peterkin v. Jeffes*, 855 F.2d 1021, 1031 (3d Cir. 1988). It follows that "[t]he denial of exercise or recreation may result in a constitutional violation." *Gattis v. Phelps*, 344 F. App'x 801, 805 (3d Cir. 2009) (non-precedential). At the same time, "'a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation.'" *Id.* (quoting *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997)).

The Court of Appeals has not established a hard-and-fast rule as to when a deprivation of outdoor exercise satisfies the objective prong of the Eighth Amendment test.[8] Other courts have

---

[7] Plaintiff bases his claim on the denial of *outdoor* exercise. It is not clear from the record, however, what outdoor exercise actually means for an inmate housed on DC status in the RHU. Defendants have made various references to the "exercise cages," so presumably before the imposition of the challenged restriction, Plaintiff was permitted to exercise in a locked outdoor cage and not in what is typically thought of as the "yard." The size of the exercise cage, its location, and whether Plaintiff was permitted to exercise with other inmates is not known from the record.

[8] In fact, unlike a number of its sister courts, our appellate court has never extensively addressed when a deprivation of outdoor exercise amounts to a substantial deprivation in a precedential opinion. Since its 1987 decision in *Peterkin*, 855 F.2d 1021, the issue has only come up in non-precedential opinions. In those cases, the Court of Appeals has upheld shorter restrictions on outdoor exercise than Plaintiff experienced. *See, e.g. Laurensaue v. Romarowics*, 528 F. App'x 136, 140 (3d Cir. 2013) (non-precedential) (citation omitted) (13-day restriction is constitutional); *Fantone v. Herbik*, 528 F. App'x 123, 127 (3d Cir. 2013) (46-day restriction on exercise is constitutional where inmate was injured and thus "would not have been able to participate"). On the other end of the spectrum, it has at least implied that much longer restrictions – 13 months, for example – might be objectively, sufficiently serious to state a claim. *Hughes v. Smith*, 237 F. App'x 756, 760 (3d Cir. 2007) (non-precedential). Between those two poles, however, the Court of Appeals has not offered much in the way of guidance.

7

suggested that "[t]he determination of when restricted exercise rises to a level of constitutional magnitude depends upon the facts of each case." *Medeor-Bey v. Jones*, 983 F.2d 1067, 1992 WL 376889, at *2 (6th Cir. 1992) (non-precedential). "In making this inquiry, courts should consider the totality of the circumstances, including the length of the deprivation, the availability of reasonable alternatives to out-of-cell exercise time, penological justifications for the deprivation, whether the inmate suffered any ill health effects as a result of the deprivation, and the amount of out-of-cell time per day the inmate is allowed." *Heinz v. Teschnedorf*, No. 05- 73470, 2006 WL 2700813, at *4 (E.D. Mich. Sept. 19, 2006) (citing *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983); *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995); *Dabney v, McGinnis*, No. 97-489A, 2006 WL 1285625, at *4 (W.D.N.Y. May 9, 2006)); *see also Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (citing *Peterkin*, 855 F.2d at 1028-29 and identifying similar relevant factors).

Having carefully weighed those factors here, the Court cannot but recognize that this is a close case. On the one hand, an 82-day restriction on outdoor exercise is near the outer bounds of what courts outside this Circuit have considered constitutionally acceptable. *See, e.g.*, *Thomas v. Ponder*, 611 F.3d 1144, 1151 (9th Cir. 2010) ("A prohibition on outdoor exercise of six weeks is a 'sufficiently serious' deprivation to support an Eighth Amendment claim."); *Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994) (inmate who received 30 minutes of outdoor exercise over a three-month span stated a viable claim, albeit at the motion-to-dismiss stage); *but see Pearson v. Ramos*, 237 F.3d at 884 (citation omitted) ("a denial of yard privileges for no more than 90 days at a stretch is not cruel and unusual punishment"); *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003) (citing *Pearson* with approval but noting, without elaboration, that "there may be some time less than ninety days that violates the Eighth Amendment . . . "). Moreover,

the Court cannot ignore the fact that Plaintiff was also on shower restriction during the same 82-day period in which the outdoor exercise restriction was in place, which exacerbated the effects of the exercise restriction, making Plaintiff's need for an opportunity to leave his cell for exercise more acute than it would have otherwise been. *See Delaney v. DeTella*, 256 F.3d 679, 684 (7th Cir. 2001) (denying defendants' motion for summary judgment where inmate "lacked any other recreational alternatives or access to common areas which may have mitigated the severity of a 6-month denial of yard privileges"); *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (citing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) for the proposition that "outdoor exercise [is] required when prisoners [are] otherwise confined in small cells almost 24 hours per day"). Although the record is not clear on this point, Plaintiff appears to have been locked down in his cell for the entire 82-day period without *any* opportunities to leave.[9] Having the opportunity to use the showers would have at least offered Plaintiff a change from the tedium of his cell and permitted him to engage in a limited form of exercise while walking to and from the showers.

On the other hand, although Plaintiff alleges that he suffered pain and depression because of the lack of outdoor exercise, he has not presented any credible medical evidence establishing a causal connection between the denial of outdoor exercise and his alleged physical and psychological injuries.[10] *See Pearson*, 237 F.3d at 886 (discussing the need for credible medical

---

[9] According to Plaintiff, inmates in the RHU are typically confined to their cells for 22 ½ hours per day. Inmates are only allowed out of their cells for showers and exercise. Since Plaintiff was not permitted out of his cell to shower or exercise for 82 days, the reasonable inference is that he could not leave his cell at all during that period. The shower restriction (and the other ordinary restrictions associated with Plaintiff's confinement on DC status in the RHU), thus, distinguishes this case from *Pearson*, the case on which Defendants rely for the proposition that an 82-day restriction is, as a matter of law, not substantial. Specifically, in that case, the inmate was allowed out of "his cell at least four times a month and more often seven or eight times a month, either to take showers (generally once a week), to visit family members, to go to the law library, or to visit the health center." 237 F.3d at 888 n.3 (Ripple, J., concurring).

[10] The Court of Appeals has not firmly decided whether physical or psychological harm resulting from outdoor exercise must be shown in order to state a claim. A few District Courts in this Circuit have imposed such a requirement. *See, e.g.*, *Wyland v. Brownfield*, No. 08–1601, 2011 WL 5445305, at *7 (W.D. Pa. Nov. 9, 2011) (dismissing conditions-of-confinement claim because, *inter alia*, plaintiff failed to allege that "he sustained a

9

evidence linking alleged harm to denial of exercise). He also has not come forward with any evidence that he could not exercise in his 6-7'-by-10' cell, which although not optimal, at least afforded him enough space to engage in routine calisthenics. *See Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir. 1997) (finding no constitutional violation where inmate could "engage in exercise in his cell such as push-ups, sit-ups, jogging in place, and step-ups").

Additionally, as Defendants argue, "[a]lthough the cases in this area have generally established the constitutional necessity for some out-of-cell exercise, courts concede that penological justifications may, in certain circumstances, justify restrictions" on that right. *Mitchell v. Rice*, 954 F.2d 187, 192 (4th Cir. 1992) (citing *Patterson*, 717 F.2d at 289); *accord Williams v. Greifinger*, 97 F.3d 699, 704-05 (2d Cir. 1996); *Pearson*, 237 F.3d at 881; *Leonard v. Norris*, 797 F.2d 683, 685 (8th Cir. 1986); *Dockery v. Legget*, No. 09-732, 2012 WL 2872554 (W.D. Pa. May 22, 2012) *report and recommendation adopted*, 2012 WL 2872106 (W.D. Pa. July 12, 2012). Such restrictions, however, "must be limited to 'unusual circumstances' or circumstances in which exercise is 'impossible' because of disciplinary needs." *Williams*, 97 F.3d at 704 (quoting *Mitchell*, 954 F.2d at 192; *Spain*, 600 F.2d at 199).

For instance, in *Pearson*, over a six-month span, the plaintiff attacked and beat a guard so severely that the guard required hospitalization; set fire to blankets, coats and cardboard boxes, causing smoke to fill the prison; spat on the face of a guard who was trying to restrain him after

---

specific physical injury from the lack of exercise"); *Short v. Danberg*, No. 08–106–JJF, 2008 WL 4722396, at *6 (D. Del., Oct. 21, 2008) (explaining that "a constitutional violation will occur when the deprivation of exercise extends for a prolonged period of time and tangible physical harm resulting from the lack of exercise is demonstrated"). However, "[t]he clear implication of May" – a case from the Ninth Circuit that our appellate court has cited with approval on a few occasions, *see, e.g.*, *Gattis*, 344 F. App'x at 805 – "is that temporary denials of outdoor exercise must have adverse medical effects to meet the Eighth Amendment test, while long-term deprivations are substantial regardless of effects." *Lopez v. Smith*, 203 F.3d 1122, 1133 n.15 (9th Cir. 2000) (interpreting *May*, 109 F.3d at 565). Other courts have refused to dispose of the injury-requirement entirely, but nonetheless acknowledged that "in conditions-of-confinement cases," "there may be some interplay between the severity of the deprivation alleged and the required showing of injury." *Delaney v. DeTella*, 256 F.3d 679, 685 (7th Cir. 2001). Specifically, when the deprivation exceeds 90 days, there is a "strong likelihood of psychological injury" that may not need to be specifically proven. *Id.*

he assaulted another guard; and threw a broom and a bottle of bodily fluids at a medical technician, striking the victim in the face. 237 F.3d at 885. After each infraction, the plaintiff was punished with a 90-day denial of yard privileges, with the restrictions running consecutively, so all told the plaintiff spent almost an entire year without having access to outdoor exercise. *Id.* Rejecting the plaintiff's challenge to the 360–day denial of yard privileges, the Seventh Circuit Court of Appeals reasoned that the prison officials acted reasonably in imposing the restrictions in light of the plaintiff's history of incorrigible and assaultive behavior. *Id.* As the court explained,

> All four infractions occurred when the plaintiff was outside his cell. All occurred within the short space of six months. They marked the plaintiff as violent and incorrigible. To allow him to exercise in the yard would have given him additional opportunities to attack prison staff and set fires. Preventing access to the yard was a reasonable method of protecting the staff and the other prisoners from his violent propensities.

*Id.*

That rationale applies with equal force in this case. While Plaintiff's conduct was arguably not as severe as that of the plaintiff's in *Pearson*, it was nonetheless "not trivial." *Id.* at 885. Three times over the course of the seven months leading up to the imposition of the exercise restriction – including the last of the misconducts on March 5, 2010 – Plaintiff lashed out at guards while using or en route to the exercise cages. Meanwhile, in the midst of these incidents, guards discovered a piece of sharpened metal in Plaintiff's cell. In view of these incidents, the prior incident at SCI Fayette involving the assault on the counselor, and the fact that the earlier 7-day restrictions did nothing to alter Plaintiff's behavior, Defendant Barone had an ample basis to believe that the restrictions were necessary. In these sorts of situations, "[p]rison authorities must have some tools available as sanctions[,]" and "[t]he choice of tools and how to apply them is largely left to the good judgment of those authorities." *Leonard*, 797 F.2d at 685. On balance,

therefore, the Court concludes that the denial of outdoor exercise for 82 days does not amount to a sufficiently serious deprivation under the Eighth Amendment. While the Court recognizes the severity of the sanction imposed on Plaintiff, it will not second guess Barone's decision to impose it. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

        **a.    Showers**

It is also undisputed that Plaintiff was not allowed access to the showers for 82 days, and that he normally would have been given three opportunities to shower each week. While an inmate must be able to maintain his hygiene while imprisoned, "[t]he Eighth Amendment does not require that inmates receive frequent showers." *Difillipo v. Vaughn*, No. 95-909, 1996 WL 355336, at *5 (E.D. Pa. June 24, 1996) (citation omitted). Thus, "[c]ourts have generally held that a temporary deprivation of the opportunity to shower does not violate the Eighth Amendment." *Fernandez v. Armstrong*, No. 02-2252, 2005 WL 733664, at *6 (D. Conn. Mar. 30, 2005) (citations omitted). Eighty-two days without access to the showers, however, is certainly pushing the boundaries of what courts have found permissible. *See, e.g.*, *Ekene v. Cash*, No. 11-9318, 2013 WL 2468387, at *7 (C.D. Cal. June 7, 2013) (denying defendant's motion to dismiss where prisoner was denied "shower[s] or out-of-cell exercise for [three months]"). Nevertheless, just as courts have found that outdoor exercise may be restricted in certain cases, they have likewise recognized that prison officials may restrict an inmate's access to showers for legitimate penological reasons. *See, e.g.*, *Maylender v. Prison Health Syst.*, 64 F. App'x 609, 610 (9th Cir. 2003) (non-precedential) (citation omitted) (upholding district court's grant of summary

12

judgment "because [plaintiff] failed to rebut the prison's legitimate penological reason for its actions based on [plaintiff's] history of attempted escape"); *Ekene*, 2013 WL 2468387, at *7 (noting that "[d]efendant has not otherwise alleged that this denial of showers . . . advanced some legitimate penological interest or safety concern")

The same penological concerns that justified the imposition of the outdoor exercise restriction justified the shower restriction. Two of the five incidents with the guards occurred while Plaintiff was using the showers. Preventing Plaintiff from accessing the showers was thus another reasonable way in which to protect staff, and possibly other inmates, from future outbursts by Plaintiff. Furthermore, Plaintiff had soap and a sink in his cell, so he could wash himself daily if he desired to do so. *See Shakka v. Smith*, 71 F.3d 162, 168 (4th Cir. 1995) (holding that denial of shower for several days was not cruel and unusual punishment because Plaintiff had other ways to clean himself); *Cruz v. Jackson*, No. 94 Civ. 2600, 1997 WL 45348, at *7 (S.D.N.Y. Feb. 5, 1997) (holding that although plaintiff was "denied showers for a finite time," there was no constitutional violation because "he had running water in his room"). While Plaintiff alleges that the water in his cell was turned off on certain unspecified dates and purportedly is prepared to offer a fellow inmate to testify as to this point – a contention that Defendants deny – even if this is true, the lack of running water on a few occasions during the 82-day period would not amount to a substantial deprivation. *See, e.g.*, *Castro v. Chesney*, No. 97–4983, 1998 WL 767467, at *9 (E.D. Pa. Nov. 3, 1998) ("The mere fact that the water in Plaintiff's cell was turned off for a period of days, without more, even if proved by Plaintiff is not sufficient to rise to the level of a constitutional violation.") Accordingly, Defendants are entitled to summary judgment on this aspect of Plaintiff's claim, as well.

## 2. Subjective Prong

Assuming that Plaintiff could establish a sufficiently serious deprivation under the Eighth Amendment, he would then have to show that each of the Defendants acted with the requisite state of mind – that of deliberate indifference. This he cannot do.

While the presence of legitimate penological concerns is a factor that must be considered at the objective prong of the Eighth Amendment analysis, it can also be viewed as a component of the subjective prong. *See Lemaire v. Maas*, 12 F.3d 1444, 1458 (9th Cir. 1993) (The question is "whether curtailing these outdoor exercise [and shower] privileges as to [Plaintiff], because he both abused them and represents a grave security risk when outside his cell, meets the subjective requirements for an Eighth Amendment violation."). For the same reasons discussed *supra*, the Court holds that Plaintiff's claim of deliberate indifference is belied by the reasons offered by Defendants for the imposition of the restrictions. The denial of outdoor exercise and shower privileges was linked directly to Plaintiff's own misconduct. He was "the master of his own fate. As long as he engaged in violent and disruptive behavior, prison officials are authorized and indeed required to take appropriate measures to maintain prison order and discipline and protect staff and other prisoners . . ." *Id.* Moreover, although Plaintiff claims that he sent a DC-135A form to Defendant Barone, he has not established that Defendant Barone was aware of adverse medical or psychological effects of the restrictions and that Barone ignored Plaintiff's complaints. *See Rasho v. Walker*, 393 F. App'x 401, 403 (7th Cir. 2010) (finding no constitutional violation where plaintiff did not allege "that officials have ignored the pleas for medical assistance that he made after he lost yard privileges"). Indeed, according to Barone's affidavit, he believed that Plaintiff had ample space to exercise in his cell and was able to adequately maintain his hygiene. Therefore, even if Plaintiff could establish that the restrictions

were objectively, sufficiently serious, his claim would still fail because Defendants were not deliberately indifferent to any substantial risk of harm to Plaintiff.[11]

B.      **Qualified Immunity**

Government officials are entitled to qualified immunity "'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Messerschmidt v. Millender*, --- U.S. ----, 132 S.Ct. 1235, 1245 (2012) (internal quotation marks omitted). Thus, "all but the plainly incompetent or those who knowingly violate the law" will be protected from liability. *Id.* (internal quotation marks omitted). In deciding whether an official is entitled to immunity, the Court must ask (1) whether the official's conduct violated a constitutional right; and if so, (2) whether that right was "clearly established . . . in light of the specific context of the case." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *receded from by Pearson*, 555 U.S. 223.

The Court has already found that Defendants did not violate Plaintiff's constitutional rights. Even if they had, though, Defendants would be entitled to qualified immunity. While the right to outdoor exercise and basic hygiene may have been clearly established in March 2010, it was not at all clear when Defendant Barone imposed the challenged restrictions that denying an

---

[11] Plaintiff's claim against Defendant Sauers is even more attenuated than the claim against Defendant Barone. Defendant Sauers did not become the superintendent of SCI Forest until March 28, 2010 – 23 days after the restrictions were imposed. At the time, she was not made aware of the restrictions; in fact, she did not learn of them until May 13, 2010, when Plaintiff filed his only grievance referencing the restrictions. In light of these facts, the Court has serious doubts whether Plaintiff's allegations with respect to Sauers satisfy § 1983's personal involvement requirement. In any event, as soon as Sauers became aware of the restrictions, she referred the matter to the PRC for review and, as a direct result, Plaintiff's shower and exercise privileges were restored. That could hardly be considered deliberate indifference.

15

inmate access to showers and outdoor exercise for 82 days in response to repeated instances of assaultive behavior occurring while exercising or using the showers violated the Eighth Amendment. There is a dearth of case law from our appellate court addressing this issue, and courts outside this Circuit have not endorsed a clear rule across the board as to when and for how long showers and exercise may be denied for penological reasons, such the only conclusion Barone could have drawn was that his conduct was unconstitutional. Indeed, as Defendants assert, prior to 2010, a number of courts had held that prison officials *could* impose similar and sometimes even longer restrictions on an inmate's access to outdoor exercise and showers without violating the Eighth Amendment. Although a number of courts did recognize prior to 2010 that the restrictions could not be imposed for petty disciplinary infractions, this Court is not in the position to question Defendant Barone's decision that Plaintiff's violations, in light of his violent history, were not petty and had the potential to escalate even further. Against that backdrop, it was not unreasonable for Defendant Barone to impose the lengthy restrictions that he imposed. Nor was it unreasonable for Sauers to continue the restrictions until such time as the PRC could re-review Plaintiff's status and determine that he did not present a threat any longer. Thus, to the extent that Plaintiff could make out a claim for a violation of his Eighth Amendment rights, Defendant would nonetheless be entitled to summary judgment.

## IV. Conclusion

In accordance with the foregoing, Defendants' is DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 74) will be **GRANTED**. An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID HARRIS,  )
       Plaintiff,  )
       v.  ) 1:11-cv- 256
MICHAEL BARONE and DEBRA SAUERS,  )
       Defendants.  )

## ORDER OF COURT

AND NOW, this 13th day of June, 2014, for the reasons set forth in the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 74) is **GRANTED**. The Clerk shall docket this case **CLOSED**.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc: **David Harris**
FC7039
SCI-Albion
10745 Route 18
Albion, PA 16475
(via First Class mail)

**Mary Lynch Friedline, Esquire**
Email: mfriedline@attorneygeneral.gov
(via CM/ECF)